IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

REBECCA LYNN FRYAR                                                    PLAINTIFF

V.                                        NO. 12-2309

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration            DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Rebecca Lynn Fryar, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claim for supplemental security income (SSI) benefits under the

provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must

determine whether there is substantial evidence in the administrative record to support the

Commissioner's decision. See 42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff filed her current application for SSI on September 13, 2010, alleging an inability

to work since May 25, 2010, due to the following impairments: bi-polar; ADHD/Anxiety

disorder; and intestinal problems. (Tr. 131-134, 145, 167). An administrative hearing was held

on September 29, 2011, at which Plaintiff appeared with counsel and she and her mother

testified. (Tr. 31-74).

By written decision dated November 10, 2011, the ALJ found that during the relevant

_____

[1]Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as
Defendant, pursuant to Rule  25(d)(1) of the Federal Rules of Civil Procedure.

AO72A
(Rev. 8/82)

time period, Plaintiff had an impairment or combination of impairments that were severe - bipolar disorder, anxiety disorder, and dependent personality disorder. (Tr. 12). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 12). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: she is able to perform work where interpersonal contact is incidental to the work performed, there is no contact with the general public, the complexity of tasks is learned and performed by rote with few variables and use of little judgment, and the supervision required is simple, direct, and concrete.

(Tr. 14). With the help of a vocational expert (VE), the ALJ determined Plaintiff would be able to perform jobs such as hand packager, inspector, and assembler. (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on October 23, 2012. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 13, 14).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind

-2-

would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled

-3-

an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC).  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

## III.   Discussion:

Plaintiff raises the following issues on appeal: 1) The ALJ did not develop the record fully and completely; 2) The ALJ's RFC determination is inconsistent with the evidence: and 3) Plaintiff cannot perform the jobs identified at step five.  (Doc. 13).

### A.  Failure to Fully and Fairly Develop the Record:

The ALJ has a duty to fully and fairly develop the record.  See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995);  Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000).  This is particularly true when Plaintiff is not represented by counsel.  Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994).  This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary.  See 20 C.F.R. § 404.1512.  The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010).  However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record.  See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").  "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment.  They

-4-

simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989).

Plaintiff contends that the ALJ failed to ask her treating source at Perspectives Behavioral Health Management, LLC (Perspectives) to complete an assessment of her work-related limitations or to obtain any type of medical source statement from Dr. Don Ott, Psy.D. She also contends that Plaintiff's generic physical examination should have been performed by a gastroenterologist.

On January 11, 2010, a Diagnostic Evaluation was conducted by Bethany Genrich, LMSW, at Perspectives. (Tr. 232-251). Her diagnosis was:

|  |  |
|---|---|
| Axis I: | Bipolar Disorder NOS |
|  | Post-traumatic Stress Disorder, chronic |
|  | Pyromania |
|  | Sexual Abuse of child (victim) |
|  | Physical abuse of child (victim) |
|  | R/O ADHD Combined type |
| Axis II: | Deferred |
| Axis III: | Intestinal problems |
| Axis IV: | Primary support issue, social environmental issue, occupational issue |
| Axis V: | GAF - Current - 35; Highest in past year- 51, lowest in past year -11 |

(Tr. 249-250). On January 27, 2010, Plaintiff was seen by Brent V. Witherington, M.D., at Perspectives, who noted that Plaintiff reported she had been exercising as directed, and that a drug screen was positive for THC. (Tr. 207). In treatment notes from Perspectives dated between April 2, 2010 and June 30, 2010, Plaintiff was reported as doing well on her medication, with some increased headaches, and having been compliant with taking the prescribed medication.

-5-

(Tr. 210).  It was also reported that Plaintiff had been able to spend more time with her friends since her mood symptoms had been more under control, and that the medication had stopped most of the hallucinations. (Tr. 210-211). Plaintiff reported that her mood swings were more under control and she had been able to remain calm when she normally would have "went off" on someone. (Tr. 211).

On January 13, 2011, a General Physical Examination was performed on Plaintiff, who reported smoking ½ to 3/4 packs of cigarettes per day for two years. (Tr. 280). No physical limitations were identified. (Tr. 284).

On January 25, 2011, a Mental Diagnostic Evaluation was conducted by Dr. Ott, a licensed psychologist. (Tr. 285-291). Dr. Ott noted that Plaintiff reported no current psychotropic medications, and that she smoked one pack of cigarettes per day. (Tr. 286-287). She had no current suicidal intent. (Tr. 287). Dr. Ott diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Nicotine Dependence |
| Axis II: | Dependent Personality Disorder |
| Axis V: | GAF - 70-80 |

(Tr. 289). Dr. Ott also reported that malingering was suspected, specifically in regard to command hallucinations, and that there were no current symptoms of a thought disorder or major mood disorder. (Tr. 289).  Plaintiff reported to Dr. Ott that: she was a licensed driver but did not have a vehicle; she lived with her mother; did her own laundry; cleaned her room; and prepared some of her own food. (Tr. 290). She reported no significant problems getting along with other people, her verbal skills were satisfactory, and the capacity to cope with the mental demands of work was satisfactory. (Tr. 290). Dr. Ott observed no specific limitations in the areas of concentration, persistence or pace. (Tr. 290).  He did find that Plaintiff's reports of auditory

-6-

hallucinations seemed exaggerated, and that the attempts to harm herself that she described sounded manipulative or attention-getting rather than lethal. (Tr. 291).

On February 15, 2011, a Mental RFC Assessment was completed by non-examining consultant Kevin Santulli, Ph.D. (Tr. 297-299). He found Plaintiff was capable of unskilled work, and was able to perform work where interpersonal contact was incidental to work performed, where complexity of tasks was learned and performed by rote, with few variables, and little judgment; and where supervision required was simple, direct and concrete (unskilled). (tr. 300). Dr. Santulli also completed a Psychiatric Review Technique report. (Tr. 301-313).

Plaintiff testified at the hearing that she had not been able to afford to get medication. (Tr. 48). Her mother testified that she took out a loan of $4,000 to buy a trailer for Plaintiff to stay in, and paid a $600 fine for her. (Tr. 66, 68). Her mother also testified that she was paying $20 every Monday for the domestic violence classes Plaintiff was taking. (Tr. 68).

The Court believes Plaintiff's arguments are without merit on this issue. There was sufficient medical evidence before the ALJ for him to make a determination regarding Plaintiff's mental and physical limitations, and he was therefore not required to seek additional information.

Accordingly, for the foregoing reasons, as well as for those reasons given in Defendant's brief, the Court finds there is substantial evidence to conclude the ALJ fully and fairly developed the record.

**B.    RFC Determination:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of

-7-

AO72A
(Rev. 8/82)

her limitations.  <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005); <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  <u>Lauer v. Apfel</u>, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  <u>Lewis v. Barnhart</u>, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  <u>Id</u>.

Plaintiff argues that the ALJ improperly weighed the various medical opinions in arriving at his RFC.

The ALJ found Plaintiff was able to perform a full range of work at all exertional levels, with certain non-exertional limitations.  The ALJ considered all of the medical evidence of record, as well as Plaintiff's descriptions of her limitations, and her mother's description of limitations.  The ALJ gave Plaintiff's mother's testimony little weight, and explained why. It is noteworthy that the ALJ addressed the fact that although Plaintiff indicated she was unable to afford medication or treatment, her mother spent $4,000 for a trailer, paid her $600 criminal fine, and was paying $20 a week for her domestic violence class.  "The undersigned notes that this money could have easily been used to obtain appropriate medical treatment for the claimant's impairments. Also of note, the claimant continues to smoke (although she has cut down due to the expense), which suggests that there is additional money that could be used to obtain treatment for the claimant." (Tr. 18). The ALJ also sufficiently addressed Plaintiff's objections

-8-

to Dr. Ott's qualifications. (Tr. 18). The ALJ concurred with the opinions of the state agency medical consultants who provided assessments at the initial and reconsideration levels, and added an additional limitation of "no contact with the general public" to the RFC assessment. (Tr. 17). The ALJ found Dr. Ott's evaluation was consistent with a finding that Plaintiff was able to perform unskilled work. (Tr. 17). With respect to the treatment Plaintiff received from Perspectives, the ALJ noted that Plaintiff's symptoms improved with medication and counseling, and as indicated earlier, the records from Perspectives do reflect that Plaintiff reported having fewer mood swings, was sleeping better, having more energy, and eating more. (Tr. 16).

Based upon the foregoing, the Court believes the ALJ gave proper weight to the medical opinions, and that his RFC Assessment was supported by the record as a whole.

**C.    Jobs Plaintiff Can Perform:**

Plaintiff argues that the hypothetical question posed to the VE by the ALJ did not contain all of the limitations that are supported by the evidence.

In his hypothetical question to the VE, the ALJ stated:

> Q: There is no past relevant work so I would ask you to assume a hypothetical individual same age, education, no past relevant work as Ms. Fryar, assume that individual has no exertional limitations per se, from a non-exertional standpoint is limited to work where interpersonal contact is incidental to the work performed, the complexity is learned and performed by rote with few variables and use of little judgment, supervision required is simple, direct, and concrete, and which does not involve contact with the general public. Can you identify jobs at the medium, light, sedentary level that would accommodate those limits?

(Tr. 70). In response, the VE reported that at the medium exertion level there were jobs as hand packager, at the light exertion level there were unskilled inspector jobs, and at the sedentary level, there were assembly jobs. (Tr. 70-71).

AO72A
(Rev. 8/82)

The Court believes the hypothetical the ALJ proposed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). The Court further believes that the VE's responses to this hypothetical question constitute substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as a hand packager, inspector, and assembler. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from VE based on properly phrased hypothetical question constitutes substantial evidence).

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 11th day of February, 2014.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-10-

AO72A
(Rev. 8/82)